# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## SCOTT, TRUSTEE V. JONES, &C.

### February 16, 1882.

1. LOANS OF CHATTELS.—If not in writing; duly recorded, loans of chattels are, under Code 1873, ch. 114, § 3, void as to creditors of loanee, but valid as between the parties, however long loanee may keep possession.

2. IDEM.—The operation of the statute will be avoided, by the lender's resuming possession, or granting the chattels to another, by writing duly recorded, within five years.

3. IDEM.—If no writing declaring such loan be recorded, or no demand be made by lender, and pursued by course of law, for more than five years after possession commenced, the loan is void as to the loanee's creditors, whose rights cannot be affected by lender's subsequent resumption of possession. But the creditors meant are those whose debts were contracted before the resumption of possession, or conveyance of the chattels, by the lender—they having given credit to loanee on the apparent ownership of the property.

4. CASE AT BAR.—A slave was placed as a nurse, by a father, in the possession of his married daughter, without any proof whether it was intended as a loan or a gift. The slave remained there more than five years, and had three children, when in 1853 the father conveyed the slave and her children to S, in trust for the separate use of his daughter, by deed duly recorded. Afterwards three judgments were obtained against daughter's husband, and executions levied on these slaves. Two of the debts were shown by the record to have been contracted since the deed was recorded. As to third, it did not appear. S, the trustee, obtained an injunction—afterwards dissolved.

HELD:

    1. The deed vacated the loan, not as to husband's debts contracted before, but as to those contracted after its recordation.

    2. The *onus* was on the creditor to show that his debt was contracted before the deed was recorded, in order to render the property liable therefor.

Appeal from decree of circuit court of Franklin county in suit of Robert A. Scott, trustee for Ann E. Ferguson, *against* John Jones and other judgment creditors of Patrick H. Ferguson, said P. H. Ferguson, and William P. Thompson, sheriff of said county.

Patrick H. Ferguson married Ann E., daughter of George H. Woods. Some time after the marriage, Woods put in the possession of Ferguson, as a nurse for his wife, a slave named Grace, who remained there more than five years and had three children, when, in 1853, Woods conveyed the slaves to Scott, in trust for the separate use of Mrs. Ferguson and her children, by deed duly recorded in February, 1855. Some time after deed was recorded, John Jones and two other creditors of P. H. Ferguson obtained judgments against him, and caused their executions therein issued to be levied on the slaves, as Ferguson's property. The record shows that the debts on which two of the judgments were obtained were contracted after the deed was recorded, but does not show when the third was contracted. The slaves were advertised for sale by Thompson, sheriff. Scott, as trustee, obtained an injunction restraining the sale, which afterwards, on hearing, the circuit court dissolved. Scott, trustee, &c., appealed to the district court at Lynchburg, and the appeal was, by operation of law, transferred to this court.

*J. A. Early,* for the appellant.

*E. Barksdale, Jr.,* for the appellees.

STAPLES, J., delivered the opinion of the court.

The first question we have to determine is, whether the negro woman, Grace, was delivered to Patrick H. Ferguson upon a loan or as a gift.

Upon this subject there is no direct evidence. All the information we have is that many years ago Grace was placed by George H. Woods, the then owner, in the possession of his daughter, Mrs. Ferguson, as a nurse, and was permitted so to remain in her possession until the execution of the deed hereafter to be more particularly mentioned.

In the absence of any proof on the subject, such a transaction is to be regarded rather as a loan than a gift. In *Mahon* v. *Johnson,* 7 Leigh, 319, Judge Tucker said: "In *Brown* v. *Handley,* delivered at this term, it was observed that though parol gifts of slaves, accompanied by possession, were valid, yet the evidence of such gift should be clear and entirely satisfactory before it could be established, for as the gift is without value received, it is but reasonable that the party who is to be deprived of his property without an equivalent should be clearly proved to have parted with it. This can never be done where the evidence to establish the gift is altogether equivocal, and such is always the case with mere evidence of possession in a transaction between a father and his child."

And in *Cross* v. *Cross, Adm'r,* 9 Leigh, 245, the same judge said: "And I am, moreover, inclined to think that as between father and child possession of a slave is very equivocal evidence of a gift, as temporary loans of young females are very usual from a father to a young married daughter, and from mere possession, unaccompanied by evidence of a gift, there is nothing from which a gift can more fairly be inferred than a loan. In such a case, it is the duty of the court to infer the lesser rather than the greater—the loan rather than the gift. For if the testimony is satisfied by the inference of a loan, upon what principle can we further infer the fact of a gift which is not required by the evidence in the case."

Although these observations of Judge Tucker were not

necessary to the decision of the case, they were concurred in by Judges Brooke and Brockenbrough, and they have been ever since recognized as furnishing a most safe and satisfactory rule for the guidance of the courts in this class of cases.

In this instance there is the greater reason to adhere to that rule because it does not appear—it is not pretended— that Patrick H. Ferguson, the son-in-law, at any time asserted title to the negro woman and her two children, born whilst in his possession.

He made no objection to the execution of the deed settling the property upon Mrs. Ferguson and her children, although at that time he was entirely free from debt, and might, therefore, be the more unwilling to abandon his claim of ownership, if any he had.

The deed of settlement to which reference has been made bears date 11th October, 1853. There is no doubt the effect of this deed was to confer a separate estate upon Mrs. Ferguson for her life, and at her death to pass the property to her children.

The language of the deed is, "The said slaves and their increase are not to be liable for any debt of the said Patrick Ferguson now existing against him, or any he may hereafter contract, but to belong to the said Ann E. Ferguson for her support and the support of her children."

Language the most technical could not the more effectually exclude the marital control and all liability for the husband's debts.

The next question is, whether, notwithstanding this deed, the slaves therein conveyed were liable to the debts of Patrick Ferguson, he having been in possession of the same more than five years before its execution and recordation.

The claims of the appellees as creditors rests upon the following provision, found in section 3, chapter 114, Code of 1873:

"Where any loan of goods or chattels is pretended to have been made to any person with whom or those claiming under him, possession shall have remained five years, without demand made and pursued by due process of law on the part of the pretended lender, * * the absolute property shall be taken to be with the possession, and such loan, reversion * * void as to creditors of and purchasers from the person remaining in possession, unless such loan * * be declared by will, deed, or other writing duly recorded."

It has been held that under this statute, although the loan may be void as to creditors, because not declared in writing and recorded, it is, nevertheless, valid and sufficient between the parties, no matter how long the possession may have continued with the loanee. *Boyd* v. *Stainback*, 5 Mun. 305.

It has been further held that the resumption of possession by the lender, or the recording a deed or will granting away the property to another within the five years, avoids the operation of the statute and puts an end to the loan. And there is no doubt the execution and the recordation of a deed or will are equivalent to the actual resumption of possession on the part of the lender.

If, however, the loanee is permitted to remain in possession more than five years without such deed or will so recorded, or without demand made and pursued by due course of law, the loan is void as to creditors, the property is subject to their claims, and the lender cannot, by resuming the possession, affect the rights of such creditors.

It would seem to be equally clear, however, if the possession is resumed by the lender before rights of creditors have attached, the property cannot be held liable for any subsequent debts contracted by him, the transaction being free from all imputation of fraud or bad faith.

The creditors referred to in the statute are manifestly

existing creditors who have given credit upon the apparent ownership of the property; as between the immediate parties the transaction is always to be regarded as a loan, and the loaner may at any time put an end to its existence and reinvest himself with the possession and ownership, if there are no intervening rights of creditors or purchasers. The fact that the loanee incurs subsequent liabilities cannot affect the title of the loaner.

This would seem to be a very plain principle, and yet the decree of the circuit court is manifestly founded upon an entirely different view of the statute from that here taken. For, with respect to two of the claims, not only were the judgments recovered after the recordation of the deed of settlement, but the debts were centracted after that date. With respect to the third debt, it is not so clear when it was contracted. The judgment was not recovered until after the recordation of the deed, and if the debt itself was contracted before, the appellee ought to have averred and proved it. The *onus* was upon him to show that the property, under the statute, was liable to his debt. So far from it, there is not in the record an allegation that any of the debts were contracted prior to the execution and recordation of the deed of settlement, or that credit was extended to the loanee upon the faith of the apparent ownership of the property.

For these reasons, I think the circuit court erred in dissolving the injunction and dismissing the bill. That court ought to have perpetuated the injunction.

In the view now taken, the subject-matter of controversy is of very little importance, for the title to the slaves has been effectually settled by another power. An affirmance might have resulted very disastrously to the sureties on the appeal bond. It is therefore gratifying to be able to reach a conclusion which satisfies justice whilst it violates no rule of law.

The decree of the circuit court is reversed, and a decree to be entered perpetuating the injunction.

The decree was as follows:

The court is of opinion, for reasons stated in writing and filed with the record, that the decree of said circuit court is erroneous in dissolving the injunction awarded the appellant and dismissing the bill. It is therefore decreed and ordered that said decree be reversed and annulled, and that the appellant recover against the appellees his costs by him expended in prosecuting his appeal aforesaid here And this court proceeding to enter such decree as the said circuit court ought to have rendered, it is further decreed and ordered that said injunction be reinstated and perpetuated, and that the plaintiff in said circuit court recover against the defendants his costs by him about his suit in said court expended. Which is ordered to be certified to the said court.

DECREE REVERSED.